OPINION
{¶ 1} Plaintiff-appellant State of Ohio appeals from a decision of the Montgomery County Court of Common Pleas granting defendant-appellee James L. Myrick's motion to suppress filed on August 11, 2005. A hearing was held on said motion on August 25, 2005, and on September 16, 2005, the trial court issued a written decision sustaining the motion. For the following reasons, the judgment of the trial court will be affirmed.
 I {¶ 2} On April 7, 2005, Officer Brandon Sucher of the Trotwood Police was dispatched to a nightclub named "O.G.'s"[1] located in a strip mall on Salem Avenue in order to eject the appellant, Myrick, who had previously been barred from the establishment. When Officer Sucher arrived on the scene, he observed Myrick and an acquaintance, Esrich Walton, sitting in the rear of the bar. After verifying Myrick's identity, Officer Sucher escorted him outside into the parking lot where he was promptly arrested for trespassing.
 {¶ 3} Myrick testified at the suppression hearing that after he was placed in the back of Officer Sucher's cruiser, he asked Walton to notify his wife that he had been arrested and to drive his vehicle back to his residence. Walton testified that he immediately approached one of the police officers at the scene and requested that he be allowed to return the vehicle to Myrick's residence. Officer Sucher, however, decided to impound the vehicle and perform an inventory search of its contents pursuant to Trotwood's tow policy. As a result, Walton was told that he could not take possession of Myrick's vehicle.
 {¶ 4} Upon performing a search of the vehicle, Officer Sucher discovered a loaded handgun and extra ammunition in a soft-sided case located between the front seats. Myrick later made admissions to police detectives with respect to his ownership of the handgun found in his vehicle, and he was subsequently indicted on one count of having a weapon under disability, R.C. §2923.13(A)(2).
 {¶ 5} In the instant appeal, the State argues that the trial court erred when it sustained Myrick's motion to suppress any physical evidence retrieved from the vehicle as well as any statements he made pertaining to the handgun seized during the search. Pursuant to the Trotwood Police tow policy, the State asserts that Officer Sucher had the discretion to impound and search Myrick's vehicle after arresting him for trespassing in the nightclub.
 {¶ 6} The State filed notice of appeal on September 22, 2005.
 II {¶ 7} The State of Ohio's sole assignment of error is as follows:
 {¶ 8} "WHEN A PERSON'S ARREST SEPARATES HIM FROM HIS VEHICLE, TROTWOOD'S WRITTEN TOW POLICY ALLOWS BUT DOES NOT REQUIRE THE POLICE TO IMPOUND THE VEHICLE. HERE, OFFICER SUCHER TOWED MYRICK'S VEHICLE BECAUSE HE HAD JUST ARRESTED MYRICK FOR CRIMINAL TRESPASS AND HE BELIEVED MYRICK WOULD BE SUBJECT TO ARREST AGAIN IF HE RETURNED TO THE PARKING LOT LATER TO RETRIEVE HIS VEHICLE. THE OFFICER'S DECISION TO TOW WAS IN CONFORMITY WITH TROTWOOD'S TOW POLICY AND IT WAS REASONABLE, AND CONSEQUENTLY, THE INVENTORY SEARCH DID NOT VIOLATE MYRICK'S RIGHTS."
 {¶ 9} In its sole assignment, the State contends that because Officer Sucher acted in accordance with Trotwood's written tow policy, it was within his discretion to have Myrick's vehicle towed after the arrest was made. The State also points out that the trial court found that the inventory of Myrick's vehicle was not a pretextual search for incriminating evidence. Thus, the State argues that Officer Sucher's decision to impound and search the vehicle was permissible under the Fourth Amendment, and the trial court was incorrect when it sustained Myrick's motion to suppress.
 {¶ 10} With respect to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521, 548,679 N.E.2d 321, quoting State v. Venham (1994),96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v. Isaac
(July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citing State v. Retherford (1994), 93 Ohio App.3d 586,639 N.E.2d 498. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 11} The "inventory exception" to the warrant requirement of the Fourth Amendment permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle. See South Dakota v. Opperman (1976),428 U.S. 364, 376, 96 S.Ct. 3092, 3100; State v. Mesa (1999),87 Ohio St.3d 105, 108-109, 717 N.E.2d 329, 332, 333. The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function. Opperman,
supra, 428 U.S. at 370.
 {¶ 12} Such an inventory search is deemed to be constitutionally permissible in the absence of a warrant because it reasonably serves to protect the owner's property while it is in police custody, to protect police against claims concerning lost or stolen property, and to protect police and the public against potential hazards posed by the impounded property.Florida v. Wells (1990), 495 U.S. 1, 110 S.Ct. 1632.
 {¶ 13} "To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." State v. Hathman (1992),65 Ohio St.3d 403, 604 N.E.2d 743, paragraph one of syllabus. A police officer's assertion that an inventory search was done pursuant to a police department policy is not sufficient, standing alone, to meet the State's burden of proving that a warrantless search was reasonable because it fits within the inventory search exception to the warrant requirement. State v. Wilcoxson (July 25, 1997), Montgomery App. No. 15928. "Rather, the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that standardized policy." Id.
 {¶ 14} With respect to Trotwood's policy for impounding an arrested suspect's vehicle, Officer Sucher provided the following testimony:
 {¶ 15} "Q: But, in fact — well, now, you said that it is the City of Trotwood's policy to tow vehicles every time there's an arrest made?
 {¶ 16} "A: We can, yes.
 {¶ 17} "Q: Is it their policy to do that, though?
 {¶ 18} "A: It's officer's discretion, and my discretion is when I make an arrest and the owner of the vehicle is present and that individual is being arrested, I tow the vehicle.
 {¶ 19} "Q: So is, in fact, the towing of the vehicle your discretion, or is it pursuant to a written policy of the City of Trotwood Police Department?
 {¶ 20} "A: I'm able to do it based on our policy, which is what I'm saying. I'm able to tow a vehicle after and [sic] arrest based on [the] City of Trotwood's tow policy, and I towed the vehicle.
 {¶ 21} "Q: Which is your discretion to tow it.
 {¶ 22} "A: Sure is."
 {¶ 23} It should be noted that although Officer Sucher claimed that a written tow policy for the City of Trotwood did exist, he did not articulate a standardized policy nor was a standardized policy ever offered into evidence during the suppression hearing. The above exchange clearly indicates that even if the Trotwood Police possessed a written tow policy, the decision to tow a vehicle is not based on an objective, standardized set of criteria. Rather the decision to impound a vehicle, according to Officer Sucher's understanding of the policy, is based on the whim of the arresting officer. As we held in State v. Bozeman (May 22, 2002), Montgomery App. No. 19155, 2002-Ohio-2588, "a wholly discretionary determination by police whether to impound a vehicle confined to the unfettered discretion of a police officer" did not constitute "a standardized, routine policy or practice, that takes their actions outside the warrant requirements of theFourth Amendment."
 {¶ 24} When our holding in Bozeman, supra, is applied to the facts of the instant case, it is clear that Trotwood's utterly discretionary tow policy violates the Fourth Amendment, and is, therefore, unconstitutional. Regardless of the circumstances surrounding an arrest, Officer Sucher testified that he always exercises his discretion and has the arrested suspect's vehicle towed. This is impermissible and clearly unconstitutional.
 {¶ 25} "In determining the lawfulness of the impoundment, authority to impound should never be assumed. A car may be impounded if it is evidence in a criminal case, used to commit a crime, obtained with funds derived from criminal activities, or unlawfully parked or obstructing traffic; or if the occupant of the vehicle is arrested; or when impoundment is otherwise authorized by statute or municipal ordinance. * * * An impoundment implies some public policy purposes being served; a legitimate purpose should not be assumed." State v. Taylor
(1996), 114 Ohio App.3d 416, 683 N.E.2d 367, citing Katz, Ohio Arrest, Search, and Seizure (1996), 224-25.
 {¶ 26} Lastly, it is undisputed that Myrick's vehicle was legally parked in the common parking lot in front of the strip mall where the nightclub was located. Additionally, Myrick was not an occupant of the vehicle nor in its proximity when he was arrested for trespassing in the club. Further, the State failed to demonstrate that Myrick was trespassed from the common parking lot where his vehicle was parked. Thus, Officer Sucher's testimony that Myrick would have broken the law by returning to pick up his vehicle was an incorrect basis upon which to impound and search the vehicle.
 {¶ 27} With respect to the impoundment of Myrick's vehicle, the State has failed to demonstrate that the Trotwood Police maintained a standardized, routine tow policy based on a discernible set of criteria. Essentially, Trotwood's impoundment "policy" left the decision of whether to tow an arrested suspect's vehicle completely up to the arresting officer's discretion. In the instant case, Officer Sucher testified that when he arrests an individual, he always has the vehicle impounded based on the unfettered discretion afforded him by Trotwood's tow policy. This type of discretionary policy clearly violates the requirements of the Fourth Amendment.
 {¶ 28} The State's sole assignment of error is overruled.
 III {¶ 29} After an independent review of the law as applied to the facts of this case, we find that the trial court's decision to grant Myrick's motion to suppress is supported by competent and credible evidence. The judgment of the trial court is affirmed.
Grady, P.J. and Wolff, J., concur.
[1] Myrick testified at the suppression hearing that although he was barred from entering the nightclub, he owned land and building in which the establishment was located. Additionally, he testified that his wife owned a 50% interest in the nightclub.