[Cite as *State v. Reese*, 2019-Ohio-399.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-10 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-175 |
| | : | |
| STEPHEN SCOTT REESE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of February, 2019.

. . . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Atty. Reg. No. 0088791, 120 West Second Street, Suite 1717, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Stephen Scott Reese, appeals from his convictions for one count of aggravated possession of a controlled substance, a fifth degree felony under R.C. 2925.11(A) and (C)(1)(a); three counts of possession of a controlled substance, fifth degree felonies under R.C. 2925.11(A), (C)(2)(a) and (C)(4)(a); one count of illegal use or possession of drug paraphernalia, a fourth degree misdemeanor under R.C. 2925.14(C)(1) and (F)(1); and one count of operating a vehicle under the influence of alcohol or drugs, a first degree misdemeanor under R.C. 4511.19(A)(1)(a) and (G)(1)(a). Presenting two assignments of error, Reese argues that his convictions should be reversed because the trial court erred by overruling his motion to suppress evidence obtained during an inventory search of his vehicle, and because his defense counsel did not provide effective representation. We find that the trial court did not err by overruling Reese's motion to suppress, and that Reese's defense counsel was not ineffective. Accordingly, Reese's convictions are affirmed.

## I. Facts and Procedural History

{¶ 2} On August 17, 2017, Reese was involved in an automobile accident in Urbana while driving eastward on Lewis B. Moore Drive; Reese's vehicle struck the rear of the vehicle immediately preceding it at the intersection of Lewis B. Moore Drive and South Main Street. The City of Urbana Division of Police concluded that the accident resulted from Reese's failure to maintain assured clear distance, a violation of R.C. 4511.21.[1] Reese had neither a valid driver's license nor automobile insurance at the

---

[1] Reese was not issued a citation for his violation of R.C. 4511.21.

time.[2]   One passenger was travelling with Reese when the accident occurred.

{¶ 3} The accident left Reese's vehicle disabled, so the police officer in charge of the scene directed that the vehicle be towed away and taken into police custody.[3] Transcript of Hearing on Defendant's Motion to Suppress 5:2-6:1 and 8:1-9:20, Jan. 31, 2018 [hereinafter *Hearing Transcript*].   As required by General Order 28, § 4.3(C) of the Urbana Police Division Policy and Procedures Manual, the officer made an inventory of the vehicle's contents before the vehicle was towed, "including, but not limited to, the passenger compartment, [the] glove compartment, [the] trunk" and any "[u]nlocked containers within the vehicle."   Hearing Transcript 11:20-11:23 and Ex. 2.   Among other things, the officer found a gym bag that contained a glass pipe for smoking methamphetamine; a glass pipe for smoking crack cocaine; a single pill of clonazepam, in a bottle of over-the-counter ibuprofen pills; and a single pill of tramadol, in a bottle of over-the-counter testosterone supplements.[4]   *See id.* at 15:2-15:16; Trial Transcript 139:19-142:10 and Exs. 9-10, Feb. 27, 2018.   The officer then delivered a *Miranda* warning, questioned Reese about the items found in his vehicle, and conducted three

---

[2] Reese's driving privileges had been suspended in Indiana for violations he committed there.   His Ohio driving privileges were consequently suspended pursuant to R.C. 4510.61.

[3] The officer directed that Reese's vehicle be taken into custody because Reese's driving privileges were suspended.   Hearing Transcript 9:5-9:20.   Like Reese's vehicle, the other vehicle was disabled by the accident, but it was removed from the intersection by its owner, who made his own arrangements for the vehicle to be towed.

[4] Clonazepam is a Schedule IV depressant.   R.C. 3719.41(IV)(B)(9).   Tramadol is not listed by name in R.C. 3719.41, though it appears to be a Schedule IV controlled substance.   *State v. Valiente-Mendoza*, 6th Dist. Wood No. WD-16-067, 2018-Ohio-3090, ¶ 17.

field sobriety tests. Hearing Transcript 15:2-17:2. Reese failed two of the three field sobriety tests, after which the officer formally arrested him. *Id.* at 17:14-17:24. Another officer spoke with Reese's passenger, and the record does not indicate whether the passenger was charged with a criminal offense in connection with the accident or the contraband discovered in Reese's vehicle.

{¶ 4} On September 7, 2017, a Champaign County grand jury indicted Reese on six charges: Count 1, aggravated possession of methamphetamine, a fifth degree felony pursuant to R.C. 2925.11(A) and (C)(1)(a); Count 2, possession of cocaine, a fifth degree felony pursuant to R.C. 2925.11(A) and (C)(4)(a); Count 3, possession of clonazepam, a fifth degree felony pursuant to R.C. 2925.11(A) and (C)(2)(a); Count 4, possession of tramadol, a fifth degree felony pursuant to R.C. 2925.11(A) and (C)(2)(a); Count 5, illegal use or possession of drug paraphernalia, a fourth degree misdemeanor pursuant to R.C. 2925.14(C)(1) and (F)(1); and Count 6, operating a vehicle under the influence of alcohol or drugs, a first degree misdemeanor pursuant to R.C. 4511.19(A)(1)(a) and (G)(1)(a). Reese initially pleaded not guilty to all of the charges, but on November 13, 2017, he elected to plead guilty to Counts 1, 2 and 6. The trial court, however, did not fully advise Reese regarding the potential penalties—specifically, the prospect of a mandatory driver's license suspension for a maximum period of five years pursuant to R.C. 2925.11(E)—and on December 15, 2017, the court therefore granted Reese's request to withdraw his pleas.

{¶ 5} Reese filed a motion to suppress on December 19, 2017, arguing that the inventory search of his vehicle was merely a pretext for an unconstitutional investigatory search. The trial court held a hearing on January 31, 2018, and on February 5, 2018, it

entered a decision overruling the motion.   Reese appeared for a trial by jury on February 27, 2018.

{¶ 6} As its first witness, the State called the officer who arrested Reese.   The judge later interrupted the State's direct examination at "a natural break in [the officer's testimony]" to take a recess for lunch, and once the jury had exited the courtroom, the judge asked the parties "whether * * * a resolution of the case, short of a jury verdict, [was] a possibility."   Trial Transcript 145:8-145:11 and 147:2-147:8.   In response, the State indicated its willingness to enter into either of "two separate offers" it had made previously, following which defense counsel conferred with Reese.   *Id.* at 147:10-148:15.   After conferring with counsel, Reese decided to plead no contest as charged in the indictment "[f]or the specific purpose of preserving the issue of suppression for an appeal."   *Id.* at 148:19-148:24.   The judge found Reese guilty on Counts 1-3 and 5-6, proceeded to sentence him to a five-year term of community control, and filed a corresponding termination entry on February 28, 2018.[5]   Reese timely filed his notice of appeal on March 5, 2018.

## II. Analysis

---

[5] Count 4 of the indictment charged Reese with possession of tramadol as a violation of R.C. 2925.11(A) on the basis of the allegation that tramadol is "a Schedule IV drug"; the trial court found Reese not guilty on this charge.   Before accepting Reese's pleas, the court instructed the State to summarize "the evidence for each and every charge," and with respect to Count 4, the State characterized tramadol as a "dangerous drug," instead of a Schedule IV controlled substance.   *See* Trial Transcript 167:2-168:4 and 170:18-171:22.   Yet, because R.C. 2925.11(A) applies only to "controlled substance[s] [and] controlled substance analog[s]," the judge determined that the State had not presented evidence sufficient to prove Reese's guilt; by way of illustration, the judge noted that the State's evidence would have been sufficient had Reese been charged in Count 4 with a violation of R.C. 4729.51, which prohibits the sale, purchase, distribution, or delivery of "dangerous or investigational drugs."   *See id.* at 173:2-174:1.

**{¶ 7}** For his first assignment of error, Reese contends that:

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE A SEARCH OF THE INTERNAL CONTENTS OF A GYM BAG FOUND IN THE INTERIOR OF A VEHICLE WAS UNREASONABLE AND OUTSIDE OF THE SCOPE OF THE CIRCUMSTANCES JUSTIFYING AN INVENTORY SEARCH AS A RESULT OF THE TOWING OF AN INOPERABLE VHEICLE [sic].

**{¶ 8}** Reese argues that because the search of his vehicle included the contents of unlocked baggage and other containers, it exceeded the scope of a constitutionally permissible inventory search, or in other words, that it would have been proper only as a search incident to arrest. *See* Appellant's Br. 7. He posits that General Order 28 of the Urbana Police Division Policy and Procedures Manual "is merely a pretext for * * * evidentiary search[es] of * * * impounded vehicle[s]." *Id.*

**{¶ 9}** The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Taylor*, 138 Ohio App.3d 139, 145, 740 N.E.2d 704 (2d Dist.2000) (noting that "the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article 1" of the Ohio Constitution "protect the same interests in a consistent manner"). Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Among these exceptions are "[i]nventory searches performed pursuant to standard police procedures on vehicles taken into police custody

as part of a community-caretaking function." *See State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 17, citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Examples "of vehicles taken into custody" for purposes of community-caretaking "include those that have been in accidents, * * *, and those that cannot be lawfully driven." *Id.* at ¶ 20, citing *Opperman* at 368-369.

{¶ 10} Appellate "review of a [trial court's ruling on a] motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trier of fact, a trial court "is in the best position to weigh * * * evidence * * * and evaluate [the credibility of] witness[es]," so an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Graves*, 12th Dist. Clermont No. CA 2015-03-022, 2015-Ohio-3936, ¶ 9, citing *State v. Cruz*, 12th Dist. Preble No. CA 2013-10-008, 2014-Ohio-4280, ¶ 12. Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s]," whether the "facts satisfy the applicable * * * standard." *Burnside* at ¶ 8, citing *Fanning*, and *State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539 (3d Dist.1997).

{¶ 11} Here, the police officer ordered that Reese's vehicle be towed and taken into custody as authorized by General Order 28 of the Urbana Police Division Policy and Procedures Manual. While testifying at the hearing on Reese's motion to suppress, the officer explained that he issued the order because Reese's "vehicle was disabled" as the result of "front-end damage" and was obstructing traffic through the intersection of Lewis B. Moore Drive and South Main Street. *See* Hearing Transcript 8:1-8:13.

{¶ 12} According to General Order 28, § 4.3(B), "a vehicle [that] has been [rendered] inoperable," or non-compliant with the equipment requirements specified in R.C. Chapter 4513, "may be towed" if: (1) the vehicle's "continued operation" would pose a hazard to persons or property; and (2) the vehicle "is located upon any public street or other property open to the public for purposes of vehicular travel or parking." Hearing Transcript 11:20-11:23 and Ex. 2. Although a vehicle "will not [usually] be stored at the City Impound Lot" if towed by the Urbana Division of Police, the vehicle may "be towed to the Urbana Police Division Impound [G]arage" with "prior approval from either the [chief or the lieutenant of the Division]" if the vehicle "is to be held * * * for an investigative purpose." *Id.* at Ex. 2. Section 4.3(B) reflects the provisions of R.C. 4513.66(A)(1), under which "a public safety official may" order the removal of a vehicle "without the consent of the owner" following an accident "on any highway, public street, or other property open to the public for purposes of vehicular travel" if the "vehicle is blocking the highway, street, or other property" and "is unoccupied * * *."

{¶ 13} General Order 28, § 4.3(C) requires that a "motor vehicle inventory" be completed "whenever a Division-initiated tow is performed on a motor vehicle." *Id.* An inventory search serves the purposes of: "(1) protect[ing] [the vehicle] and [its] contents while [they are] in police custody, (2) * * * protect[ing] the Division [from] claims of lost, stolen, or damaged property, and (3) * * * protect[ing] Division personnel and the public [from personal] injury" and damage to property that could be caused by any "hazardous materials * * * that [might] be in the vehicle." *Id.* The inventory search should "[g]enerally" be "conducted at the location where the vehicle is seized, and it must "extend to all areas of the vehicle in which personal property or hazardous material may

reasonably be found, including, but not limited to, the passenger compartment, [the] glove compartment, and [the] trunk." *Id.* Additionally, § 4.3(C) states that the contents of "[u]nlocked containers within the vehicle will be inventoried," though "locked containers" will be "opened and inventoried [only] if [the] key[s] or [the] combination[s] [to the locks] [are] available." *Id.* This section reflects federal and Ohio case law establishing that such inventory searches are constitutionally permissible. *See, e.g., Opperman*, 428 U.S. 364, 368-371, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 17; *State v. Thompson*, 2d Dist. Montgomery No. 26130, 2014-Ohio-4244, ¶ 38.

{¶ 14} Reese argues that the trial court "should have suppressed [the] evidence obtained by law enforcement from the interior of [the] gym bag [discovered] during [the] inventory search of [his] vehicle" because his vehicle was towed on the basis of "inoperability, not [on the basis of] a lawful arrest." Appellant's Br. 7. The foregoing case law, however, directly contradicts Reese's proposition that General Order 28 "is unreasonable and [amounts to] an infringement on the constitutional rights of [persons whose vehicles are] subjected to [inventory] search[es]." *Id.* In *Leak*, for example, the Ohio Supreme Court acknowledged that "[i]nventory searches performed pursuant to standard police procedures on vehicles taken into police custody as part of a community-caretaking function are reasonable." *Leak* at ¶ 21, citing *Opperman* at 369. Inventory searches, moreover, may constitutionally extend to "closed container[s]" within a vehicle "if there is in existence a standardized policy or practice specifically governing the opening of such containers." *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph two of the syllabus; *State v. Favors*, 2d Dist. Montgomery No. 24921, 2012-

Ohio-3596, ¶ 21, citing *Hathman* at paragraph two of the syllabus.

{¶ 15} The trial court found, "[i]n the absence of evidence to the contrary," that Reese's vehicle "was disabled." (Emphasis omitted.) Journal Entry Overruling Defendant's Motion to Suppress 9, Feb. 5, 2018 [hereinafter *Journal Entry*]. Acknowledging, as did the trial court, that the only evidence regarding the condition of the vehicle after the accident was the officer's testimony that "front-end damage" had rendered the vehicle inoperable, we hold that the officer's testimony was itself competent, credible evidence sufficient to support the trial court's finding on this issue.[6] Journal Entry 2 and 9; Hearing Transcript 8:5-8:9 and 24:24-25:12. We hold further that the trial court had sufficient evidence, in the form of General Order 28, to support its finding that the City of Urbana Division of Police had "a standardized policy or practice * * * govern[ing] the search of closed containers within [a] vehicle during an inventory search." Journal Entry 10.

{¶ 16} Standing alone, a "police officer's assertion that an inventory search was done pursuant to a police department policy is not sufficient" to meet "the State's burden of proving that a warrantless search was reasonable because it fits within the inventory search exception to the warrant requirement." *State v. Myrick*, 2d Dist. Montgomery No. 21287, 2006-Ohio-580, ¶ 13, citing *State v. Wilcoxson*, 2d Dist. Montgomery No. 15928, 1997 WL 452011, *4 (July 25, 1997). Instead, " 'the evidence presented must

---

[6] The trial court erred when it found that "[t]estimony was not presented as to whether attempts were made by anyone to drive either [Reese's vehicle or the other] vehicle to the side of the road or to a place where the [damage to] the vehicle[s] * * * could be inspected more thoroughly." Journal Entry 2. The officer, in fact, testified on cross-examination that he made no attempt to move Reese's vehicle. Hearing Transcript 20:4-20:7.

demonstrate that the police department has a standardized, routine policy[;] [must] demonstrate what that policy is[;] and [must] show how the officer's conduct conformed to that standardized policy.' " *Id.*, quoting *Wilcoxson* at *4. The evidence presented to the trial court at the hearing on Reese's motion to suppress indicated that General Order 28 is a standardized policy governing the conduct of vehicle inventory searches, including containers within vehicles being searched, and that the officer properly ordered that Reese's vehicle be towed because it was disabled and was obstructing traffic on a public road. Accordingly, we hold that the trial court's findings of fact were adequately supported by the evidence, and that in its Journal Entry on Reese's motion to suppress, the trial court did not err in its application of the law. Reese's first assignment of error is overruled.

**{¶ 17}** For his second assignment of error, Reese contends that:

THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO QUESTION WITNESSES AND PRESENT WITNESSES AT A MOTION TO SUPPRESS HEARING.

**{¶ 18}** Reese faults the performance of his defense counsel at the hearing on his motion to suppress in two respects. First, Reese criticizes counsel for neither "question[ing] the extent of the damage that made [his vehicle] inoperable," nor asking "whether any attempts were made" to move his vehicle "to the side of the road" or to another place where it could safely be inspected.[7] Appellant's Br. 8. Second, Reese

---

[7] *See* note 6, above. Reese cites the trial court's erroneous finding of fact that the officer did not testify on the question of whether any attempt was made to move his vehicle out of the intersection before the tow truck arrived. Appellant's Br. 8.

criticizes counsel's decision not to subpoena any witnesses to testify on his behalf. *Id.* at 8-9.

**{¶ 19}** To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.). The *Strickland* test requires a showing that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * * defense counsel's errors prejudiced the defendant." *Id.*, citing *Strickland* at 687. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). To show prejudice, the defendant bears the burden to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different." *Id.* at 694; *State v. Southern*, 2d Dist. Montgomery No. 27932, 2018-Ohio-4886, ¶ 47. A failure "to make either showing defeats" the claim. *Cardenas* at ¶ 38.

**{¶ 20}** The basic premise of Reese's claim of ineffective assistance is that his defense counsel should have attempted to prove that his vehicle was not disabled, which would have negated the justification for the inventory search and, presumably, warranted suppression of the evidence discovered by police at the scene of the accident. Reese, however, has not shown, or even represented, that his vehicle was legally and mechanically operable after the accident. *See* Appellant's Br. 8. The police officer who

testified at the hearing on Reese's motion to suppress indicated unequivocally that Reese's vehicle was disabled, adding that no attempt was made to move the vehicle to the side of the road, or elsewhere, in light of the damage to the vehicle's front end. *See* Hearing Transcript 5:11-5:21, 8:1-9:20 and 24:24-25:12. Given that we must defer to the trial court's findings of fact if they are supported by competent, credible evidence, and given the police officer's sworn testimony that Reese's vehicle was "disabled," we hold that Reese has not satisfied his burden to show that the trial court's ruling on his motion to suppress would have been different but for his defense counsel's decision not to press the officer for a more detailed description of the damage.

{¶ 21} Similarly, Reese's contention that counsel should have subpoenaed his passenger, who was in his vehicle at the time of the accident, and the other police officer, who interviewed the passenger at the scene, falls short of satisfying his burden. Reese offers no insight into what evidence these witnesses would have provided had they been called to testify, and instead, simply speculates that their testimony might have established that his passenger "was a properly licensed," unimpaired driver who could have driven his vehicle from the site of the accident, thereby "avoid[ing] all 'inventory search' issues pursuant" to General Order 28. *See* Appellant's Br. 9. This speculation is insufficient to meet Reese's burden to show that the trial court's ruling on his motion would have been different had defense counsel called his passenger and the other officer to testify. Nevertheless, even if Reese's passenger had been legally and physiologically capable of safely driving a motor vehicle, Reese would still have had to establish that his vehicle was legally and mechanically operable.

{¶ 22} A "postconviction action, rather than a direct appeal, is the proper

mechanism for asserting [a claim] that is based on evidence dehors the record." *State v. Moon*, 8th Dist. Cuyahoga No. 93673, 2014-Ohio-108, ¶ 13, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228-229, 448 N.E.2d 452 (1983), and *State v. Curtis*, 8th Dist. Cuyahoga No. 89412, 2008-Ohio-916, ¶ 8.  Here, as the record stands, it comprises no evidence suggesting that the trial court's ruling on Reese's motion to suppress would have been different but for the purported deficiencies in the performance of his defense counsel, and Reese has not otherwise demonstrated as much.  Reese's second assignment of error is overruled.

### III. Conclusion

**{¶ 23}** We find that the trial court did not err by overruling Reese's motion to suppress, and that Reese received adequate representation of counsel at the hearing on his motion.  Therefore, Reese's convictions are affirmed.

. . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Jane A. Napier
Adam J. Arnold
Hon. Nick A. Selvaggio